DANIEL H. TOLMAN

*v.*

NATHANIEL H. JONES *et al.*

*Filed at Ottawa May 15, 1885.*

1. CONTEMPT—*refusal to obey order of court to deliver certain property into the hands of a receiver—effect of mere error in the order—or where a portion of the order is void—as to duty of person so directed.* Where a court of chancery has acquired jurisdiction over the property of an insolvent corporation, and of the defendant claiming the same, its order on the defendant to assign and turn over the property claimed by him, to a receiver, for its preservation, must be obeyed, however erroneous it may be; and the fact that such order may be too broad, and require the transfer of some of the property wrongfully, will not justify the defendant in refusing to obey.

2. An error in the exercise of the jurisdiction of the court in the ordering of one of the defendants to assign and deliver to the receiver some property not belonging to the corporation, will not render the order void as to such

property, and justify the defendant in refusing to obey the same. In such case the tests of jurisdiction as to the subject matter are the allegations of the bill, and not the proof under it.

3. But even if the order of the court is void in part in requiring the surrender of property not derived from the corporation, the remedy of the defendant is to apply to the court for a modification of the order. If he fails to pursue this remedy, and refuses to obey the order, he may be committed for a contempt of court.

4. SAME—*rule to show cause—whether necessary, before commitment.* Where a party's refusal to make an assignment of property to a receiver in pursuance of an order of the court, is reported to the court, and he is present when the matter is considered, and makes no objection to the proceeding, and is fully heard, by himself and counsel, in the matter, and after being ordered by the court to execute the assignment refuses to do so, the court will be justified in making an order for his commitment for a contempt, without any rule on him to show cause to the contrary.

5. SAME—*appeal from order of commitment—what it involves.* On an appeal from an order of the court committing a defendant to the county jail for refusing to obey a prior order requiring him to assign and hand over certain property to a receiver, no error in such prior order can be considered. The only question as to such prior order that can be considered, is, whether the court had jurisdiction to make it. It matters not, so far as the question of condemnation is concerned, whether such order was made on sufficient proof or not.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

This cause comes before this court on an appeal from a judgment of affirmance by the Appellate Court for the First District, of an order of commitment made by the circuit court of Cook county for a contempt in refusing to assign to a receiver certain property in controversy in a suit.

On April 9, 1884, Nathaniel H. Jones and Henry L. Ware brought their bill in chancery, in the circuit court of Cook county, against Albert E. Dike, Henry J. Dike, L. A. Dike, Warden S. Minkler and Daniel J. Tolman, setting out that on January 29, 1884, the Garden City Warehouse Company was organized as a corporation, for the purpose of carrying on a general warehouse and storage business, the capital stock

being $120,000; that the stockholders were said defendants and the complainants; that the stock of the complainants had been fully paid; that prior to the organization of the corporation the Dikes and Minkler, under the firm name of Dike Brothers & Minkler, had been engaged in the warehouse and storage business, in the manufacture and sale of refrigerators, and in buying and selling goods and merchandise and negotiable paper; that on January 30, 1884, the firm of Dike Brothers & Minkler sold and assigned all its assets to the Garden City Warehouse Company, and that in consideration thereof the members of said firm received shares of the capital stock of the corporation, amounting, in the aggregate, to $80,000; that Albert E. and Henry J. Dike, Minkler, and the complainants, were elected as the board of directors of the company; that the complainants had no practical knowledge of the warehouse and storage business, and that the affairs of the company were managed almost entirely by the Dikes and Minkler. The bill further shows that the Dikes and Minkler had for a long time been converting, and were then converting, to their own use the property of the company, with intent to defraud the complainants and the creditors of the company, and that to that end the Dikes and Minkler had combined and conspired with the other defendant, Tolman. It is further shown by the bill that on February 25, 1884, the Dikes, Minkler and complainants formed a special partnership, under the firm name of Dike Brothers, Minkler & Co., for the purpose of manufacturing and selling refrigerators, and buying and selling goods and negotiable paper; that the Dikes and Minkler were the general partners, and complainants the special partners; that the business of the firm was managed by the general partners; that the special firm had assumed to succeed to the business of the former firm of Dike Brothers & Minkler, with the exception of the warehouse and storage business. The bill then shows that on April 7, 1884, in pursuance of the said conspiracy between the Dikes, Minkler and

Tolman, the said Dikes and Minkler executed to Tolman their judgment promissory note, dated April 5, 1884, signed by themselves, individually, and also as Dike Brothers, Minkler & Co., for $17,500, payable on demand; that on April 7, 1884, judgment was entered upon said note by confession, in favor of Tolman, and against the Dikes and Minkler, as general partners in the said firm of Dike Brothers, Minkler & Co., and on the same day an execution was issued on the judgment, and levied upon a large amount of property, describing it, which property all belonged to the Garden City Warehouse Company; that there was no consideration for the giving of the note. The bill further shows that on the said 7th day of April, 1884, in pursuance of the said conspiracy, and in the firm name of Dike Brothers, Minkler & Co., the said Dikes and Minkler executed to Tolman, without any good or valuable consideration, an instrument in writing, which purported to be a bill of sale of a large amount of personal property, describing it, and by a general description, all the goods, wares, merchandise, property and effects of the said firm of Dike Brothers, Minkler & Co.; that at the time said bill of sale was made, the said firm of Dike Brothers, Minkler & Co. did not own any property, and that all of said property belonged to the said Garden City Warehouse Company. The bill further alleged that a large number of suits had been commenced against the Garden City Warehouse Company; that the principal part of its property had been seized, on execution or attachment; that the corporation was insolvent, and had ceased doing business, leaving a large amount of debts unpaid; that the property levied on would be sacrificed if sold at sheriff's sale. The bill prayed for the dissolution of the corporation, for the application of its assets to the payment of its debts, for an injunction against the officers of the corporation and the Dikes, Minkler and Tolman, restraining them from any interference with the property aforesaid, or with any of the property of the Garden City Warehouse Company, and for

the appointment of a receiver. An injunction was granted in accordance with the prayer of the bill, and subsequently a receiver was appointed.

On June 16, 1884, an order was entered by the circuit court that defendant Tolman appear before the master in chancery and assign and deliver over to the receiver, first, all the property transferred to or received by him under said bill of sale; second, all the property, money, things in action, or effects, to which the firm of Dike Brothers & Minkler have a legal title, or in which said last mentioned firm had any equitable interest on the 30th day of January, 1884, or at any time subsequent thereto, which were received by him (said Tolman) under or by virtue of said bill or bills of sale, or otherwise, from the said firm of Dike Brothers, Minkler & Co., and all books, papers and vouchers relating thereto, in his possession or under his control; third, all property of the Garden City Warehouse Company in the possession or control of Tolman; and fourth, the proceeds of all the aforesaid property.

The master summoned Tolman to appear before him, and directed him to execute a formal assignment, drawn in the language of the order, which Tolman refused to do, assigning as a reason that the assignment was not in accordance with the order. The master made report. On the hearing thereupon, before the court, on September 27, 1884, the court ordered Tolman to execute the deed of assignment, which was then tendered him, which he refused to do, whereupon the court made the order of commitment in question, of Tolman, to the common jail of the county, for contempt of court by refusing to execute the assignment.

Mr. JESSE HOLDOM, and Mr. FRANK J. SMITH, for the appellant:

A proceeding for a contempt is in the nature of a criminal proceeding, and as its effect is to deprive of liberty, every step provided by law for the attainment of that result must

be substantially, if not strictly, pursued, as in the case of *Stuart* v. *People,* 3 Scam. 593. A rule must be entered to show cause, giving an opportunity to answer the same. We think the court erred, and that the order committing appellant to jail was unlawful. *Buck* v. *Buck,* 60 Ill. 105.

The order of committal is a final order, in the sense that it may be reviewed by appeal or on writ of error. *Cromartie* v. *Commissioners,* 85 N. C. 211; *Hunahausen* v. *United States Fire Ins. Co.* 5 Heisk. 702; *State* v. *McKinnon,* 8 Oreg. 487; *People* v. *Healy,* 58 Barb. 564; *Railroad Co.* v. *Wheeling,* 13 Gratt. 40; *People* v. *Simonson,* 9 Mich. 492; *People* v. *Jones,* 33 id. 303; *Haines* v. *Haines,* 35 id. 138; *Blake* v. *Blake,* 80 Ill. 512; *People* v. *Stuart,* 74 id. 63; *People* v. *Perfinbrink,* 96 id. 68; *Haines* v. *People,* 97 id. 161.

Mr. John E. Burke, for the appellees:

No rule was necessary—appellant waived one by appearing and making his defence. *People* v. *Hackley,* 24 N. Y. 74.

Under the order of June 16, appellant can be required to make a formal transfer in writing. 1 Bouvier's Law Dic. title, "Assignment;" *Chipman* v. *Sabbaton,* 7 Paige, 47; High on Receivers, sec. 446.

That order was interlocutory, and no appeal or writ of error lies from it. 2 Daniell's Ch. Pl. 1587; *Beebe* v. *Russell,* 19 How. 283; *Chapman* v. *Hammersley,* 4 Wend. 173; *Coates* v. *Cunningham,* 80 Ill. 467.

The court, having jurisdiction of the parties and of the subject matter, had power to make the order of June 16; and such order, even if erroneous, must be obeyed, until the judgment of the court is reversed. *People* v. *Sturtevant,* 5 Seld. 363; *Deklyn* v. *Davis,* Hopk. 135; *Sullivan* v. *Judah,* 4 Paige, 444; *Wilcox* v. *Jackson,* 13 Pet. 511; *Rhode Island* v. *Massachusetts,* 12 id. 718; *Fennings* v. *Humphreys,* 4 Beav. 1; *Walton* v. *Dwelling,* 61 Ill. 201; *Darst* v. *People,* 62 id. 306; *Dickey* v. *Reed,* 78 id. 261.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Objection is taken to the manner of procedure in this case. It is said that a rule should have been entered to show cause, to which an opportunity should have been given to answer; that appellant was not allowed any opportunity to purge himself, or show any reason why he should not be punished for having refused to execute the assignment. Appellant was present in person before the court on the hearing of his refusal to make the assignment, made no objection to then proceeding therewith, and was fully heard, by himself and counsel, in the matter, and after such hearing he was ordered by the court to execute the assignment, and refused so to do. This was a contempt committed in the face of the court, and the court was justified in making the order of commitment without the taking of any of the preliminary steps which it is suggested should have been taken.

As appellant had, by his answer under oath, denied all the charges of fraud and conspiracy, and stated that the confession of judgment was for a *bona fide* debt due, and that the bill of sale was executed to secure the same debt, and as the hearing on which the order of June 16, 1884, for the assignment was made, was upon the sworn bill and the sworn answer of appellant, read as an affidavit, without any other evidence, it is insisted that upon such showing only there was no warrant for making an order taking the property transferred by the bill of sale, out of the hands of appellant, and handing it over to a receiver. No such objection as this can now be taken to that order of June 16. That was but an interlocutory order, made in the progress of the cause, for the preservation and holding of the property during the litigation, and is not the subject of appeal. (*Coates* v. *Cunningham,* 80 Ill. 467; *Chapman* v. *Hammersley,* 4 Wend. 173; *Forgay* v. *Conrad,* 6 How. 201.) No mere error in that order, as is that complained of as above, can now be considered,

but only whether there was jurisdiction in the court to make the order. The appeal is from the order of commitment of September 27, 1884, and not from the order of June 16, 1884, for the making of the assignment.

But, then, it is said, that conceding that it was equitable, and within the scope of the bill, to enter an order upon the motion made, yet the order entered, of June 16, is broader than the facts of the case, the allegations of the bill, or the disclosures made by any of the papers on file, warranted the court in making; that no allegation of the bill gave the court jurisdiction to make the order of June 16, and therefore the court had no jurisdiction of the property ordered to be turned over by appellant to the receiver. The respect in which the order is alleged to be too broad is in the language of the second provision, "*or otherwise,* from said firm of Dike Brothers, Minkler & Co.," thus requiring appellant not only to assign all the property which he had received under the bill of sale mentioned in the bill, but all the property he had received otherwise from the firm of Dike Brothers, Minkler & Co. It was not the purpose of the bill to interfere with the firm of Dike Brothers, Minkler & Co., and lay hold of any property belonging to it, but only to reach property of the corporation; and the charge against appellant was, that he had fraudulently received, under the bill of sale made by Dike Brothers, Minkler & Co. to him, property belonging to the corporation; and if it be the true construction of the order that it required the assignment of other property than property of the corporation, or property alleged as belonging to it, then the order, in that respect, would be too broad, and wrong. But it does not follow that appellant would be justified in disobeying the order for that reason. That would depend upon whether or not the court had jurisdiction. The principle is of universal force that the order or judgment of a court having jurisdiction, is to be obeyed, no matter how clearly it may be erroneous. (*People* v. *Sturtevant,* 5 Seld.

263; *Sullivan* v. *Judah*, 4 Paige, 444; *Fennings* v. *Humphrey*, 4 Beav. 1; *Chuck* v. *Cremer*, 2 Phill. Ch. 112; *Richards* v. *West*, 2 Green's Ch. 456; 2 Barb. Ch. 274.) This has often been held in reference to disobedience to injunctions, as in the cases above, and the principles which govern cases of contempt for a violation of an injunction order are applicable here.

There was, here, jurisdiction over the parties. The court had power to dissolve the corporation, to grant the injunction prayed for, to appoint a receiver and to place the property of the corporation in the hands of the receiver. The order of June 16 was made in the exercise of that power, and if the order embraces property not shown by the bill to belong to the Garden City Warehouse Company, this would seem to be but an error in the exercise of jurisdiction. If it had been made to appear to the court that appellant had in his possession property of the corporation received from Dike Brothers, Minkler & Co., other than that received under the bill of sale mentioned, we think the court might then properly have required such property to be turned over to the receiver, although there was no allegation in the bill of the receipt of the property. If that be so, it must be allowed that the court had jurisdiction of the subject matter, and that the error in the order was in its not being sustained by proof to the extent it was made. The test of jurisdiction would be the allegations of the bill,—not the proof made under it.

The order of June 16, at the most, was not wholly void, but only in the particular wherein it is complained of as being too broad. Appellant's proper remedy would have been an application to the court to modify the order in that respect. There was no such application. There was no such objection made to the order. The objection, before the master, to executing the assignment prepared, was, that it did not conform to the order of June 16. Before the court there does not appear to have been any reason given for refusing to execute the assign-

ment. There was no offer or willingness ever expressed to execute any assignment to the extent it is not objected to, as being to broad.

We are of opinion the judgment of the Appellate Court should be affirmed.

*Judgment affirmed.*