## Berkson v. The People of the State of Illinois.

1. APPELLATE COURT PROCEEDING—*What Will Be Considered upon an Appeal from an Order, etc.*—In a proceeding by creditor's bill, an order requiring the defendant to appear before the master and submit to

Berkson v. The People.

an examination touching his business and property, is an appealable order, under our statute, and its regularity can not be inquired into upon an appeal from a subsequent order committing the defendant to jail for contempt in disobeying it.

2.  CONTEMPT OF COURT—*Proceedings to Punish.*—The method of procedure, where parties are alleged to be in contempt of court, in cases at law, has no application to proceedings in equity.

3.  CONTEMPT OF COURT—*Order of Committal—Presence of Defendant.* —Where an order of commitment for contempt of court in refusing to submit to an examination before the master in chancery, recites " and also comes J. B., having due notice of said motion and application by his counsel," *it was held,* that when tested by recognized rules of grammar and punctuation, the language meant that the plaintiff in error was present, having been duly notified by his counsel.

4.  NOTICE—*Once in Court—Presumptions.*—After a party has once been brought into court, the presumption is that he is present at and cognizant of every step taken in the cause, until it is terminated, unless considerable time has elapsed without any steps having been taken in the case.

5.  NOTICE—*Once in Court, Always in Court—Application of the Rule.*—The defendant in a creditor's bill was ordered to submit himself to an examination before a master in chancery upon the motion of the complainant; he did so, but refused to answer questions, etc., for which he was, by a subsequent order, committed to jail for contempt. *It was held,* that, having submitted himself to the jurisdiction of the court, and submitted to the former order of the court, he must be held to have notice of every step in course up to the entry of the order of commitment.

6.  CONTEMPT OF COURT—*Certainty in Order of Commitment.*—That there should be certainty in an order of commitment in a chancery cause, wherein the commitment is, until the contemnor shall do some required act, may be conceded, but it does not necessarily follow that because there are several required acts to be performed, some of which are too general in terms to be susceptible of complete performance, that those acts which are specific, and, in the nature of things, capable of performance, should not be done.

7.  ORDER OF COURT—*Certainty as to Requirements—Contempt.*—The fact that an order as to a defendant in a creditor's bill, may have been too general in its requirements relating to the delivery by him to the receiver, " of his books of account, bills, notes, contracts, vouchers, documents, and any other evidences in writing, or documentary matter relating thereto, and to his business," is no justification of a disobedience in the particular that was certain and definite.

**Memorandum.**—Chancery proceedings.  In the Circuit Court of Cook County.  Proceedings for contempt of court; judgment of conviction; writ of error by the defendant.  Heard in this court at the March term, 1893, and affirmed.  Opinion filed March 18, 1893.

## STATEMENT OF THE CASE.

Plaintiff in error having failed in business in the fall of 1891, a creditor's bill was filed in the Circuit Court of Cook County by Aaron Feltenstein upon a judgment recovered by him. On September 22, 1891, the Circuit Court entered an order in that case appointing Charles G. Perkins receiver, upon his filing a receiver's bond in the sum of $1,000 to be approved by the court, and that plaintiff in error "do forthwith appear before I. K. Boyesen, master in chancery, and deliver to said receiver all his property not exempt from execution, as well as his bills, notes, contracts, books of account, vouchers and documents relating to said property or to his business." On December 12, 1891, the cause came before the court upon the report of said master, who reported that plaintiff in error had not truly discovered his assets, or produced his books, but claimed that they were lost, and that he had not accounted for at least $7,500. Thereupon the court entered an order finding substantially what the master had found, and confirming his report, and also entered an order reciting substantially the facts alleged in the master's report, finding him guilty of a contempt of court in not having truthfully discovered his assets, books of account, etc., to said receiver, and ordering that for said contempt he stand committed to the common jail of said county to answer for said contempt, etc.

BRIEF OF PLAINTIFF IN ERROR, BLUM & BLUM, ATTORNEYS.

Contempts are divided into two classes: Those committed in the presence of the court, and constructive contempts, i. e., those committed out of its presence. Where the alleged contempt is not committed in the presence of the court the matter must be brought before the court by affidavits of persons who witnessed it, and thereupon a rule must be made on the offender to appear and answer, or a rule to show cause why an attachment should not be issued. 4 Blk. 287; 1 Tidd Pr., 3d'Am. Ed. 88; In re Judson, 3 Blatch. C. C. Rep. 148; State v. Matthews, 37 N. H. 450; Clay's Case, Pr. Dec. 221; Crow v. State, 24 Tex. 12.

The party must appear in person and not by attorney.

Vin Abr., Contempt, F. 7; People v. Wilson, 64 Ill. 195; Vertner v. Martin, 10 L. and M. 103; 20 Am. Law Reg., N. S. 149, and cases cited; Rawson v. Rawson, 35 Ill. App. 505.

While a court may commit for contempt in its presence without the service of any process, it is essential to the validity of the order of commitment that it show that the defendant was present in court when the judgment was entered, and that no judgment against him would be valid which would be entered in his absence, and without the service of any process or rule of the court upon him requiring his appearance. Louisiana v. Judges, 32 La. Ann. 1256; Trimball v. Barnard, 15 Weekly Notes of Cases, 127; In re Pollard, 2 Law Rep. Privy Council Appeals, 106.

Brief of Defendant in Error, Moses, Pam & Kennedy, Attorneys.

When an order in supplementary proceedings is issued by a judge having jurisdiction, the person upon whom it is served has only two paths to pursue, if he desires to avoid proceedings for contempt. He must obey it, or procure it to be set aside. Even if erroneous, he has no right to disregard it. Rapalje on Contempt, Sec. 39; Wilcox v. Harris, 59 How. Pr. 262; In re Remington, 7 Wis. 643; Lutt v. Grimont, 17 Brad. 308.

The practice contended for by counsel is, that the party is to be brought into court, whereupon he is to answer on oath to interrogatories filed in the nature of a charge touching the alleged contempt, and if the party can answer upon oath, he is discharged. This is not the practice in chancery proceedings. It probably is the practice in reference to common law contempts, but it does not obtain in a proceeding in equity in this State. Petrie v. People, 40 Ill. 334; O'Callahan v. O'Callahan, 69 Ill. 552; Rawson v. Rawson, 35 Ill. App. 505; Welsh v. People, 30 Ill. App. 399.

Mr. Justice Shepard delivered the opinion of the Court.

In September, 1891, a creditor's bill was filed by Aaron Feltenstein, complainant, against the plaintiff in error, and

on the twenty-second day of that month an order was entered in said cause, appointing a receiver, and directing the plaintiff in error to assign and turn over to such receiver all his estate, etc., not exempt from execution, and requiring him to appear before the master and submit to an examination touching his business and property.

Upon the coming in of the master's report, the exceptions thereto by the plaintiff in error were overruled, and the report confirmed, by order entered December 12, 1891, wherein it was found by the court that the plaintiff in error had failed to truly discover his assets and property in possession and under his control, and had contumaciously refused to truly testify and discover the whereabouts of the same; that he had refused to honestly account for moneys received by him, and that he had, when said original order of September 22d was entered, and still had, in his possession and under his control, at least the sum of $7,500 in money, which it was his duty to pay over to the receiver, and that he refused so to do, all of which was in violation and disobedience of said original order.

And on the same day this order appealed from for a commitment to jail, in the name of the people, was entered, reciting, substantially, the same findings.

The order of commitment was for disobeying the original order of September 22d. Of that order the plaintiff in error most clearly had notice. In response to its requirements, he appeared before the master and testified, and by the order confirming the master's report and overruling his exceptions, it appears that "also came Jacob Berkson, having due notice thereof, and being represented in court by his solicitors."

His duty was fixed by that original order. That was an appealable order, under our statute, but the plaintiff in error never has sought by appeal to have it reversed or modified. On the contrary, he acquiesced in the order in so far as to submit himself to examination before the master. He can not now, in this proceeding, question the propriety of the order or its findings of fact. That could be done only by appeal from that order.

Berkson v. The People.

The assigned error that the order did not extend so far as to authorize the master to report to the court the testimony of plaintiff in error, and the master's conclusions thereon, can not be urged here for the first time. The order did by its terms require plaintiff to appear before the master and submit himself to an examination touching the matters in controversy. The objections filed before the master, and afterward filed as exceptions in the Circuit Court, fail entirely to raise that question. Those exceptions were wholly confined to controverting the correctness of the master's findings of fact.

No objection was made that either the master or the court was proceeding improperly, and we will not now, for the first time, hear such objections.

It is next urged that the order of commitment is void on its face, because it does not recite that the plaintiff in error was present when the order was entered, or had received personal notice that a rule had been entered, or would be applied for, requiring him to show cause why he should not be committed for a contempt of court.

As already stated, the plaintiff in error had notice of the order for the violation of which he was committed, and acted under it to some extent.

It appears on the face of the master's report, that he must have known what its recommendations would be, and the reasons for them.

The contempt of which he was found to be guilty, was determined from his own testimony before the master. He knew what the order required him to do, and he knew better than any one else that he was disobeying those requirements. His testimony showed that he had shortly before received large sums of money, and that he gave no reasonable account of their disposition. He therefore knew that he was violating the order of the court in refusing to discover the whereabouts of such moneys, and to turn them over to the receiver.

The cited authorities as to the method of procedure where parties are alleged to be in contempt of court in cases at law, have no application to proceedings in equity.

Neither was the contempt adjudged against plaintiff in error a criminal contempt committed in the presence of the court, but was a civil, as distinguished from a criminal, contempt, in that the act consisted of a refusal to do something that was commanded to be done, instead of being an overt act of commission. In such a case it may be questioned whether, when the judgment of commitment is entered, the personal presence in court of the contemnor is necessary. But whether that be so or not, we think the order of commitment sufficiently shows that the plaintiff in error was in court in person at the time it was entered.

The order recites: "And also came Jacob Berkson, having due notice of said motion and application by his counsel."

Tested by recognized rules of grammar and punctuation, that means that Jacob Berkson, the plaintiff in error, was present, having been duly notified by his counsel of the motion and application. What the fact may have been, we have no means, other than from the record, of knowing.

Counsel for the plaintiff in error, speaking outside of the record, say he was not present, but counsel for defendant in error answer with equal positiveness, that as a matter of fact he was present, and that counsel for plaintiff in error could not, of their own knowledge, speak concerning his actual presence or absence, for the reason they were not then in any way connected with the case.

It was said in Petrie v. The People, 40 Ill. 334, and restated in O'Callaghan v. O'Callaghan, 69 Ill. 552, "After a party has once been brought into court, the presumption is that he is present, and cognizant of every step taken in the cause until it is terminated, unless there has been considerable time elapsed without taking any steps in the case;" and it was held that notice was not necessary, that an attachment would be asked.

In this case, the plaintiff in error well knew that he had been ordered to disclose his property and turn it over to the receiver, and that he had not complied with the order, and he was bound to know the penalties of the law incurred by him for such disobedience.

So that if the recital in the order that he was present in pursuance of notice, admits of a construction, such as might be given to it, that he was present only by counsel, it would still seem to be enough.   The court had undoubted jurisdiction to make the original order.   Plaintiff in error submitted himself to the jurisdiction of the court, and had actual notice of every step in the cause up to the entering of the order of commitment, and if not then personally present, he was present by counsel, who asked for no opportunity for him to be heard to purge himself.   We do not think, upon the showing made by the record, that the plaintiff in error can complain that he was insufficiently heard in defense of his contempt.

It is further insisted that the order of commitment is void because it finds the plaintiff in error guilty of several distinct offenses, and commits him to jail until he shall have complied with each one of the several requirements imposed upon him.

That there should be certainty in an order of commitment in a chancery cause, wherein the commitment is until the contemnor shall do some required act, may be conceded, but it does not necessarily follow that because there are several required acts to be performed, some of which are too general in terms to be susceptible of complete performance, that those acts which are specific, and, in the nature of things, capable of performance, should not be done.   In the order complained of, the finding that the plaintiff in error had in his possession at least the sum of $7,500, which it was his duty to have turned over to the receiver in pursuance of the original order, was definite and certain.   Had the plaintiff in error turned that sum over to the receiver, as was found to have been his duty, and applied to the court for a modification of the order in those other respects in which it is claimed it was too general, there can be no doubt but the court would have so modified the order as to have made it comply with the requirements of justice.

The case of Tolman v. Jones, 114 Ill. 147, was an appeal from an order of commitment for refusal to obey a previous

order in the same cause, directing an assignment to a receiver of certain property in controversy. The court said: "If it be the true construction of the order that it required the assignment of other property than the property of the corporation, or property alleged as belonging to it, then the order, in that respect, would be too broad, and wrong. But it does not follow that appellant would be justified in disobeying the order for that reason.

"That would depend upon whether or not the court had jurisdiction. The principle is of universal force that the order or judgment of a court having jurisdiction, is to be obeyed, no matter how clearly it may be erroneous. * * * There was, here, jurisdiction over the parties. The court had power * * * to appoint a receiver, and to place the property of the corporation in the hands of the receiver. The order * * * was made in the exercise of that power, and if the order embraces property not shown by the bill to belong to the" corporation, "this would seem to be but an error in the exercise of jurisdiction." * * *

"The order * * * at the most, was not wholly void, but only in the particular wherein it is complained of as being too broad. Appellant's proper remedy would have been an application to the court to modify the order in that respect. There was no such application. There was no such objection made to the order. * * * There was no offer or willingness ever expressed to execute any requirement to the extent it is not objected to as being too broad."

The remarks of the Supreme Court quoted, are applicable to this case. The plaintiff in error is not shown to have objected below to any part of the original order as being too broad. He never appealed from it, but on the contrary expressly acquiesced in it, and now seeks to avoid the results of his disobedience to every part of it, on the ground that it is in some respects too general, and is not susceptible of performance in all respects.

This he may not do. The original order required him to turn over to the receiver all his property not exempt from execution.

Berkson v. The People.

By a subsequent order the court found that he had in his possession at least the sum of $7,500 in money, which it was his duty to turn over to the receiver in pursuance of the original order, and that he refused so to do.

The fact that the original order may have been too general in its requirements relating to the delivery by Berkson to the receiver of his books of account, bills, notes, contracts, vouchers, documents, and any other evidences in writing, or documentary matter relating thereto, and to his business, is no justification of a disobedience in the particular that was certain and definite.    Order affirmed.

GARY, P. J.

I submit to the authority of the Supreme Court, and acknowledge our obligation to follow their decision in Tolman v. Jones, 114 Ill. 147.    But for that decision I should believe that if a court directs, by an order from which no appeal will lie, a party to do what he ought not to be required to do, or makes the order in such vague or uncertain terms that the party can not tell what is required of him, then an order committing him for disobedience or non-performance, is erroneous, and being erroneous, and should be reversed in a direct proceeding to review it.    In this case the order appointing a receiver, while appealable under the act of June 14, 1887, was an order of course, that could not be reversed.    Edwards v. Rodgers, 41 Ill. App. 405.

But the residue of the order, as to what the then defendant was to do, was not appealable.    It could not be reviewed. Lester v. Berkowitz, 125 Ill. 307.

And the court there say, *obiter*, that on review of a judgment for contempt " the propriety of the preliminary or interlocutory order should be considered."

Lester v. People (Ill.) 23 N. E. 387, where the Supreme Court did review the order which was before them in 125 Ill., is not final, as we are informed, being suspended by petition for rehearing pending or granted.    On the whole I feel bound to concur in the opinion of Judge Shepard.