Rosemary Bulmer, Plaintiff-Appellee, *v.* Robert A. Bulmer, Defendant-Appellant.

(No. 73-367;

Fifth District—May 2, 1975.

James J. Massa, of Collinsville, for appellant.

Joseph R. Bartylak, of Legal Assistance Foundation, Inc., of Alton, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is a consolidated appeal from (1) an order denying defendant's petition to modify a divorce decree by eliminating alimony of $60 per month and reducing child support of $180 per month, and (2) an order committing defendant to jail for 60 days for contempt in failing to comply with orders of the court for payment of alimony and child support. The order of commitment for contempt was entered upon plaintiff's cross-petition and it contained a proviso that defendant could purge himself of contempt by paying $700 of his arrearage.

The parties in this action were divorced on June 21, 1971. Custody of two minor children, a boy approximately 12 years of age and a girl ap-

proximately 16 years of age was awarded to the plaintiff. At the time of the divorce plaintiff was unemployed and defendant was employed as a salesman. His earnings at that time were $580 per month. The decree of divorce ordered that defendant pay alimony of $60 per month and child support of $180 per month. Defendant made these support payments until June 1973 when his employment as a corrugated-box salesman was terminated. His petition to modify the decree by eliminating alimony and reducing child support payments was filed in August 1973. Following hearing the petition was denied on August 28, 1973, and plaintiff's contempt petition continued. On April 11, 1974, a different judge, following hearing, issued a contempt citation but with a right to purge if defendant would pay $700 to plaintiff. This amount was not paid. Defendant's motion to stay commitment during the pendency of his appeal was granted.

We are confronted with two questions: Did the trial court abuse its discretion in denying defendant's petition to modify his payments under the divorce decree; did the trial court abuse its discretion in citing him for contempt?

Section 18 of the Divorce Act (Ill. Rev. Stat., ch. 40, par. 19) states in part:

> "The court may, on application, from time to time, terminate or make such alterations in the allowance of alimony and maintenance, and the care, education, custody and support of the children, as shall appear reasonable and proper."

■■ In all cases where petitions to modify payments under a divorce decree are involved, the primary question is whether or not changes in circumstances of the parties justify the modification. In the case before us we think they do. At the time the decree was entered defendant was earning $580 a month as a corrugated-box salesman. Prior to filing for modification, factors over which he had no control made it impossible for him to earn this amount. He therefore terminated his employment and sought other work. Except for sporadic employment he was without work during the summer of 1973. On August 13, 1973, he commenced receiving unemployment compensation of $63 per week. Later in 1973 he again obtained regular employment but, as nearly as can be told from the record, earned approximately $200 per month less than he was earning at the time of the divorce.

The facts show that plaintiff has been continuously employed following the decree, having increased her salary to $425 per month at the time of the hearing on modification. With a show of effrontery, the plaintiff made vacation trips to Europe in 1972 and 1973 with her expenses paid by a "boyfriend." Despite the arguments pro and con as to whether or

not defendant lived too extravagantly following the decree of divorce, the facts do show that his earnings are considerably less, that he was unemployed for a period of time, that he has reduced his standard of living, and that the plaintiff is now working and earning. In *Scalfaro v. Scalfaro*, 123 Ill.App.2d 23, 259 N.E.2d 644, the court reduced alimony and child support from $137.50 per week to $85 per week where the facts showed that the defendant had lost all but one restaurant owned at the time of the decree and that the remaining restaurant was in debt. His earnings had been reduced to $160 per week. In the course of its opinion the court said that it was its purpose to "* * * arrive at a realistic and practical order that the defendant can live on and live with."

In re *Estate of Weisskopf*, 39 Ill.App.2d 380, 188 N.E.2d 726, was one in which the mother, having custody of the children, sought to invade the children's estate, hence the issue is not the same as in the case we consider. However, the court made an observation pertinent to the instant case and to which we subscribe. Quoting from *Purity Baking Co. v. Industrial Commission*, 334 Ill. 586, 588, 166 N.E. 33, the court said: "'However, since the wife has become emancipated and now possesses the full enjoyment of her property and earnings there is no longer any reason why she should not be held legally responsible for the support of her minor children equally with her husband.'" (39 Ill.App.2d 380, 385.) In *Tuey v. Tuey*, 20 Ill.App.3d 445, 314 N.E.2d 371, the court affirmed a reduction in alimony from $300 to $200 a month despite increased earnings of the husband. The court was motivated by the fact that the wife who had had no income at the time of the divorce was at the time of the petition for reduction earning $578 per month. The court said: "Where both the husband and the wife are in receipt of income or possess valuable property, the wealth of the wife as well as the husband should be taken into consideration."

In *Warren v. Warren*, 40 Ill.App.2d 286, 189 N.E.2d 401, the court upheld a reduction of alimony from $55 to $20 per week where the wife had gained steady employment at $75 per week though the salary of the husband had not changed. Quoting from *Byerly v. Byerly*, 363 Ill. 517, 525, 2 N.E.2d 898, the court stated: "'There is no hard and fast rule for the fixing of alimony.'" (40 Ill.App.2d 286, 289.) Factors which the court said should be considered are age, health, property and income of each, previous station in life and number and ages of dependent children. The court further stated, quoting from *Cahill v. Cahill*, 316 Ill.App. 324, 336-37, 45 N.E.2d 69, "'The law is well established that where both the wife and husband are in receipt of income, the income of the wife as well as that of the husband must be taken into consideration in determining the amount of alimony the divorced husband must pay

\* \* \*.' " (40 Ill.App.2d 286, 289.) The court remarked that the wife was not employed at the time of the decree and was under no obligation to seek employment but that if she did obtain employment she had "\* \* \* effected a substantial change in her financial circumstances," which could be supportive of a modification of alimony or child support.

■■ We have reviewed cases cited by the appellee and find nothing in them that alters our view that defendant's petition for modification should have been granted. In *Loucks v. Loucks*, 130 Ill.App.2d 961, 266 N.E.2d 924, the petition was filed only a little more than a year after the original decree, petitioner was still in the same business though there had been a loss in income due to a general decline in business conditions, he had remarried 4 months after the decree, was living rent-free with his father-in-law and was able to purchase and operate a large new car. In the meantime the wife's situation had not changed. In *Gregory v. Gregory*, 52 Ill.App.2d 262, 202 N.E.2d 139, the issue involved past due alimony and child support. The court simply said that this was a vested right and that the remarriage of the defendant and a child by that marriage was not a sufficient change in conditions to warrant a modification of future payments. In *Thomas v. Thomas*, 18 Ill.App.3d 673, 310 N.E.2d 432, the alleged change in conditions was one which had been expected and allowed for when the decree was granted. In the instant case the circumstances giving rise to the change in condition of the parties could not be taken into account at the time the decree was granted. In *Shaffner v. Shaffner*, 212 Ill. 492, 72 N.E. 447, the decree was granted in 1888. Defendant was in arrears when a petition for a contempt citation was filed in 1902. Defendant was a lawyer, kept no books, and gave only very general testimony about his financial condition. The court was unable to find facts on which it could base either defense for his nonpayment or support for a change in conditions justifying diminishing his monthly payments. *Storm v. Storm*, 9 Ill.App.3d 1071, 293 N.E.2d 633, was a contempt proceeding. There was no petition for reduction of child support. Regarding the allegation of willful contempt, however, the court said: "The test is whether the defendant has established 'to the satisfaction of the court that his failure was due entirely to his inability to pay' \* \* \*." (9 Ill.App.3d 1071, 1077.) In *Daum v. Daum*, 11 Ill.App.3d 245, 296 N.E. 2d 614, the facts were quite different from those in the instant case and the court could find no basis for modifying the decree. In the course of its opinion the court remarked: "The burden is upon the moving party to show such circumstances as would require modification." (11 Ill.App. 3d 245, 249.) We subscribe to this view but hold that in the instant case the defendant has met that burden.

■■ We feel, however, that the facts justify the contempt citation issued

approximately 8 months after the denial of defendant's petition and by a different judge. The facts differ from those in *White v. Adolph,* 305 Ill. App. 76, 26 N.E.2d 993, a case mentioned by the defendant in argument though it is not in his brief, where the court made no provision which would have permitted defendant to purge himself and in which the record did not disclose that defendant's refusal to pay had been willful and contumacious. And in *Schuele v. Schuele,* 57 Ill.App. 189, a case also mentioned by the defendant, the court held that it is not contempt unless defendant intentionally puts money he might have paid out of reach or intentionally fails to receive it.

In the instant case there was evidence to show that the defendant was $2180 in arrears in child support and alimony payments. In March 1974 he earned $1300. From this he paid $400 on a personal loan but remitted only $30 in child support. Furthermore, the evidence indicates that he could have paid the $700 set by the trial judge as a purge from the contempt citation. This he did not do but used the money for other purposes.

While we realize that the burden is on the petitioner to show such a change in circumstances as will justify the modification of alimony or child support, we do not believe the trial court should take a narrow or short-term view of the defendant's situation. Unless a defendant can retain the self-respect and motivation essential to successful employment those dependent upon him will be the losers over the long run regardless of what the immediate situation may be. Pressing a defendant for more than he can possibly pay may result in his being driven to despair rather than to employment, modest as his earnings from the latter may be. It is better for his dependents to have something rather than nothing.

Reversed with orders to modify the divorce decree by the elimination of alimony but continuing the child support at $180 per month. Affirmed with respect to the order of commitment for contempt.

EBERSPACHER and CARTER, JJ., concur.